[No. 34707-5-II.   Division Two.   May 8, 2007.]

THE STATE OF WASHINGTON, *Respondent*, v. RONNIE ADAM TYLER PETERSON, *Appellant*.

478

*Thomas E. Doyle*, for appellant.

*Edward G. Holm*, *Prosecuting Attorney*, and *James C. Powers*, *Deputy*, for respondent.

¶1 HUNT, J. — Ronnie Adam Tyler Peterson appeals his bench trial convictions for attempted first degree robbery and first degree malicious mischief, both committed while

armed with a deadly weapon. He argues that (1) a missing element in the amended information charging malicious mischief warrants reversal of his conviction; (2) the evidence is insufficient to support the trial court's finding that he possessed a deadly weapon, as defined under RCW 9.94A.602, while committing malicious mischief; and (3) the evidence is insufficient to support his attempted robbery conviction. We vacate the deadly weapon sentencing enhancement on the malicious mischief count. Otherwise, we affirm.

## FACTS

### I. THE INCIDENT

¶2 Late one December, Don Westfall, his son Donnie Westfall,[1] and Donnie's friend Ryan Johnson returned from a ski trip in Westfall's truck. Arriving at the Mud Bay Park and Ride lot outside Olympia, where Johnson had left his car, they noticed two vehicles, Johnson's and another's, parked close to each other. Johnson's car's emergency flashers were blinking. When Westfall's truck pulled up next to Johnson's car, Ronnie Adam Tyler Peterson appeared from the passenger-side door, looked at Westfall's truck, and ran in the opposite direction, wielding the same knife he had used to extract the stereo.

¶3 Westfall ordered Donnie to drive after Peterson, who was also carrying something that looked like "the car stereo" under his arm. Peterson jumped into the bushes bordering the park and ride lot perimeter, but he was unable to penetrate further into the dense bushes. Westfall jumped out of his truck, pursued Peterson on foot, and shouted for Peterson to stop and to come out. At some point during this pursuit, Peterson dropped the car stereo into the ditch just beyond the bushes.

¶4 With his right hand extended, Peterson approached Westfall and shouted something like, "I have a knife. I will

---

[1] We use Donnie's first name for clarity. We intend no disrespect.

cut you." Grabbing Peterson by the wrists, Westfall tackled and pinned him to the ground. Seeing a knife in Peterson's right hand, Westfall applied pressure to Peterson's wrist, forcing him to drop the knife. Donnie picked up the knife and threw it 10 to 15 feet away. Westfall told Johnson to call 911. The only other vehicle in the parking lot, which had been parked near Johnson's car, drove up and stopped next to Westfall, Donnie, Johnson, and Westfall's truck. Peterson yelled for the driver, "Eric," to leave, and the vehicle drove off.

¶5 Shortly thereafter, a deputy sheriff arrived and took Peterson into custody. Thurston County Sheriff's Deputy Chris Ivanovich noticed a car stereo on the ground and a lockable knife nearby. The blade of the knife measured exactly three inches. The knife that Peterson used to threaten Westfall was the same knife he had used to pry the stereo out of Johnson's car.[2]

¶6 A deputy advised Peterson of his *Miranda*[3] rights, which he waived. Peterson admitted that he broke into Johnson's car using a "window-punch" and that he had stolen the car stereo. The deputy tape-recorded this admission.

¶7 Deputy Ivanovich then inspected Johnson's vehicle: The passenger-side window was smashed, the inside of the vehicle was ransacked, and the dashboard was damaged where the car stereo had been. The damage to Johnson's car totaled approximately $2,000.

## II. Procedure

¶8 The State charged Peterson with (1) one count of attempted robbery in the first degree while armed with a deadly weapon or, in the alternative, assault in the second

---

[2] Peterson told the deputy that he had a second knife. And a subsequent pat-down search by responding Sheriff's Deputy Mark Holden revealed a third knife in Peterson's pocket. The State does not allege and the record does not show, however, that Peterson used or displayed either of these two other knives while committing the charged crimes.

[3] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

degree while armed with a deadly weapon and (2) one count of malicious mischief in the first degree while armed with a deadly weapon. Peterson waived his right to a jury trial.

¶9 The trial court found Peterson guilty of (1) attempted robbery in the first degree while armed with a deadly weapon and (2) malicious mischief in the first degree while armed with a deadly weapon. In sentencing Peterson, the trial court imposed consecutive deadly weapon enhancements for the two counts.

¶10 Peterson appeals.

## ANALYSIS

### SUFFICIENCY OF EVIDENCE

¶11 Peterson challenges the sufficiency of the evidence supporting the deadly weapon enhancement for his malicious mischief conviction. Peterson admitted at trial that while inside Johnson's car, he had used his three-inch knife to cut the wires to the stereo. But he argues that it does not meet the statutory definition of "deadly weapon" for sentencing enhancement purposes. We agree with Peterson that the record does not show that his use of the three-inch-bladed knife to cut the car stereo wires was in a manner "likely to produce or [might] easily and readily produce death," sufficient to meet the statutory definition of a "deadly weapon" under RCW 9.94A.602.

### A. Standard of Review

¶12 Evidence is sufficient to support a conviction if, viewed in the light most favorable to the prosecution, it permits any rational trier of fact to find the essential elements of the crime beyond a reasonable doubt. *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). "A claim of insufficiency admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom." *Salinas*, 119 Wn.2d at 201. Circumstantial evidence and direct evidence are equally reliable. *State v. Delmarter*, 94 Wn.2d 634, 638, 618 P.2d 99 (1980).

## B. Deadly Weapon

¶13  RCW 9.94A.602 provides, in pertinent part:

> In a criminal case wherein there has been a special allegation and evidence establishing that the accused or an accomplice was *armed with a deadly weapon at the time of the commission of the crime*, the court shall make a finding of fact of whether or not the accused or an accomplice was *armed with a deadly weapon at the time of the commission of the crime.*

(Emphasis added.) There are two ways an instrument can qualify as a "deadly weapon" under this statute: (1) The instrument is specifically listed as a "deadly weapon" in 9.94A.602 or (2) the instrument "has the capacity to inflict death and *from the manner in which it is used*, is likely to produce or may easily and readily produce death." RCW 9.94A.602 (emphasis added). We address each in turn.

### 1. Per se deadly weapon

¶14  RCW 9.94A.602 lists the following instruments as automatic or per se "deadly weapons" for purposes of the deadly weapon sentencing enhancement:

> Blackjack, sling shot, billy, sand club, sandbag, metal knuckles, any dirk, dagger, pistol, revolver, or any other firearm, *any knife having a blade longer than three inches,* any razor with an unguarded blade, any metal pipe or bar used or intended to be used as a club, any explosive, or any weapon containing poisonous or injurious gas.

(Emphasis added.) The trial court found and the State agrees that Peterson's three-inch knife does not fall within this statutory list of per se deadly weapons.

### 2. Non-per se deadly weapon

¶15  Because the three-inch knife that Peterson used to damage Johnson's car and to extract the stereo does not fall within the statutory list of per se deadly weapons, we focus on the second deadly weapon category—whether the knife Peterson used to remove the car's stereo is an

instrument that "has the capacity to inflict death and *from the manner in which it is used, is likely to produce or may easily and readily produce death.*" RCW 9.94A.602 (emphasis added).

¶16 The trial court concluded, and the State argues on appeal, that the three-inch knife Peterson used to extract the car stereo qualifies under this second "deadly weapon" category because (1) it had the capacity to inflict death and (2) Peterson's manner of use could easily and readily have produced death. We acknowledge that this is a close question. But we have difficulty understanding how Peterson's manner of use could easily and readily have produced death where there was no other person in or near Johnson's car while Peterson was using the knife to cut the stereo wires and to pry out the stereo in a deserted park and ride lot.

¶17 Moreover, although the trial court engaged in an extensive inquiry to determine whether Peterson possessed a deadly weapon during his subsequent robbery of West-fall,[4] it did not make a separate inquiry to determine whether the manner in which Peterson used the knife to commit malicious mischief in Johnson's car met the criteria for a deadly weapon for that separate crime. Instead, the trial court summarily concluded that the deadly weapon sentence enhancement should apply to the malicious mischief conviction as well.[5] Our independent review of the record leads us to conclude that the evidence does not

---

[4] In determining whether Peterson possessed a deadly weapon during commission of the robbery, the trial court concluded that, under *State v. Johnson*, 155 Wn.2d 609, 610-11, 121 P.3d 91 (2005), robbery includes the use of force in an attempt to obtain or to retain possession of the stolen property. The trial court ruled that Peterson's commission of the robbery was still ongoing when he confronted Westfall near the bushes because at that time Peterson was attempting to retain the stereo. Therefore, Peterson's knife brandishing during the continuing commission of the robbery qualified the knife as a deadly weapon under RCW 9.94A.602. Peterson does not challenge this ruling on appeal.

[5] The trial court stated:

Now, the second count was malicious mischief in the first degree. The evidence as to that count was essentially stipulated. There was no contrary evidence that the physical damage was in excess of $1,500 to the vehicle. This Court, finding that it was with a deadly weapon, will also find the defendant guilty as charged of Count 2 with the special weapons enhancement.

support the trial court's deadly weapon finding for the malicious mischief count.

¶18  RCW 9.94A.602 requires that if an instrument is not on the statute's list of per se deadly weapons, then the instrument qualifies as "deadly weapon" only if (1) it has the capacity to inflict death *and* (2) the defendant uses it in a way likely to produce death *or* that may easily and readily produce death. Here, we assume, without deciding, that a knife with a three-inch blade has the capacity to inflict death, thus meeting the first criterion for a non-per se deadly weapon. Instead, we focus on the second non-per se deadly weapon criterion—the manner of the defendant's use of the knife and the likelihood that its manner of use will easily and readily produce death.

¶19  This second criterion—"from the manner in which it is used, is likely to produce or may easily and readily produce death," RCW 9.94A.602—implies the presence of another person against whom Peterson could have readily used the knife *while committing the malicious mischief.* But there is no evidence that any other person was present or nearby while Peterson was using the knife to cut the stereo wires or, from Peterson's "manner of use" of the knife, that he would have used it to assault Westfall had he approached Peterson while still in Johnson's car cutting the stereo wires.

¶20  On the contrary, when Westfall approached Johnson's car, Peterson jumped out of the car, fled across the parking lot, and attempted to escape capture and confrontation by leaping into the bushes; Peterson did not threaten Westfall with the knife during his initial flight with the stereo. Not until the tangle of bushes thwarted Peterson's escape and Westfall confronted him did Peterson threaten Westfall with the knife in an attempt to prevent Westfall from tackling him and reclaiming Johnson's car stereo.

¶21  We agree with Peterson that (1) at the time he was using the knife to cut the stereo wires, there were no other

persons present against whom he could have used the knife in a deadly manner and (2) his manner of use of the knife during the malicious mischief was not likely or easily and readily able to produce death. Peterson's use of the knife during his commission of the malicious mischief does not meet the statutory criteria for a non-per se deadly weapon for sentencing enhancement purposes under RCW 9.94A.602.

¶22 Accordingly, we hold that the trial court erred in imposing a deadly weapon sentencing enhancement on the malicious mischief count. Therefore, we vacate the deadly weapon sentencing enhancement on count II, malicious mischief, and remand to the trial court to correct the judgment and sentence.

¶23 A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record pursuant to RCW 2.06.040, it is so ordered.

ARMSTRONG and PENOYAR, JJ., concur.