IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 35374-5-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| JOSE PEDRO LINARES, | ) | |
| | ) | |
| Appellant. | ) | |

PENNELL, A.C.J. —A jury convicted Jose Pedro Linares of second degree assault with a deadly weapon and found by special verdict a gang aggravator and deadly weapon enhancement. Mr. Linares appeals, arguing: (1) insufficient evidence supports the deadly weapon element for both his conviction and the deadly weapon enhancement, and (2) the trial court erroneously imposed a 24-month term of confinement for the deadly weapon enhancement. We disagree with Mr. Linares's sufficiency challenge, but agree that the deadly weapon enhancement only carried a 1-year term. We therefore remand for correction of the judgment and sentence.

FACTS

On February 4, 2016, Eric Ruiz was washing his clothes at a Sunnyside laundromat when he saw an unknown man pacing back and forth. Soon another man came on the scene and both men started pacing. Mr. Ruiz felt uneasy. He decided to leave.

As Mr. Ruiz approached his car, one of the two men, later identified as Jose Linares, went up to Mr. Ruiz and asked if he "gang banged." 2 Report of Proceedings (RP) (Apr. 12, 2017) at 391. Mr. Ruiz was wearing some red and his car was red. Mr. Ruiz answered no. Mr. Ruiz then turned to open his car door and, as he did so, he felt himself being stabbed in the back. Mr. Ruiz did not see a weapon, but he knew he had been stabbed because after a quick thrust he felt blood dripping down his back. Mr. Ruiz saw the two men run off together behind the laundromat.

Mr. Ruiz briefly informed a laundromat employee of what had occurred and then drove to his girlfriend's place of employment. While he was driving, blood from Mr. Ruiz's wound soaked through his shirt and onto his car seat.

Once at his girlfriend's work, various employees came to Mr. Ruiz's aid and began applying pressure to the wound to prevent it from bleeding further. After Mr. Ruiz described what happened, his girlfriend's employer called the police. When emergency personnel arrived, they advised Mr. Ruiz to go to the hospital. Mr. Ruiz complied at the urging of his girlfriend and mother-in-law.

Law enforcement met Mr. Ruiz at the hospital and obtained several photos of his wound. The photos depict the general nature of Mr. Ruiz's injury and show the wound was about one-half inch in diameter. The depth of Mr. Ruiz's wound was never measured because hospital staff instead chose to perform a CT (computed tomography)

scan and a urine test to assess whether the wound was deep enough to cause any internal bleeding. The tests were also used to evaluate whether Mr. Ruiz had suffered any impact to his vital organs. Both tests came back negative and Mr. Ruiz was released from the hospital after only a few hours. Mr. Ruiz stated his wound was sore for a few days, but it did not produce excruciating pain.

Mr. Linares was charged with assaulting Mr. Ruiz. At the jury trial, a law enforcement detective testified that stab wounds can be fatal and that he had seen someone die from a stab wound to the torso. The detective explained that a stab wound to the torso could cause death due to internal bleeding caused by a severed artery or an impacted vital organ. The detective also testified that while he did not think Mr. Ruiz was going to die from the stab wound, he was concerned Mr. Ruiz might have some internal bleeding or impacted vital organs, e.g., his kidneys or possibly a lung, based on the location of the wound. Also, in regard to the incident, the detective stated that the question Mr. Linares asked of Mr. Ruiz, "do you gang bang," is essentially "a callout to find out whether [someone is] a friend or foe," which often precipitates violence. 3 RP (Apr. 13, 2017) at 466-67.

The trial testimony indicated Mr. Linares was affiliated with the Sureño gang. The Sureño gang is associated with the color blue. It is a rival to the Norteño gang, which is identified with the color red.

3

Law enforcement was unable to find the weapon that had been used to stab

Mr. Ruiz. No knife or similar instrument was admitted into evidence at trial.

The jury found Mr. Linares guilty of second degree assault with a gang aggravator

and a deadly weapon enhancement. The trial court sentenced Mr. Linares to an

exceptional sentence of 120 months in confinement, which includes a 24-month deadly

weapon enhancement. Mr. Linares appeals.

## ANALYSIS

*Sufficiency of the evidence*

Mr. Linares claims the trial evidence did not establish use of a deadly weapon,

as required for his second degree assault conviction and deadly weapon enhancement.

As set forth below, we disagree.

Evidence is sufficient to support a conviction if, viewed in the light most favorable

to the State, it permits any rational trier of fact to find the essential elements of the crime

beyond a reasonable doubt. *State v. Kintz*, 169 Wn.2d 537, 551, 238 P.3d 470 (2010).

A claim of insufficiency admits the truth of the State's evidence and all reasonable

inferences drawn therefrom. *Id.* Circumstantial evidence and direct evidence are equally

reliable. *Id.* We defer to the trier of fact on issues of conflicting testimony, credibility

of witnesses, and the persuasiveness of the evidence. *State v. Thomas*, 150 Wn.2d 821,

874-75, 83 P.3d 970 (2004).

*Deadly weapon requirement in the context of second degree assault*

The jury found Mr. Linares guilty of second degree assault in violation of RCW 9A.36.021(1)(c), which provides: "A person is guilty of assault in the second degree if he or she, under circumstances not amounting to assault in the first degree . . . [a]ssaults another with a deadly weapon." A "deadly weapon" is defined to include a firearm, an explosive, or other object which, based on the circumstances of the case, was "readily capable of causing death or substantial bodily harm." RCW 9A.04.110(6). "'Substantial bodily harm' means bodily injury which involves a temporary but substantial disfigurement, or which causes a temporary but substantial loss or impairment of the function of any bodily part or organ, or which causes a fracture of any bodily part." RCW 9A.04.110(4)(b).

A jury may conclude a defendant utilized a deadly weapon in fact based on the weapon's inherent capacity and the circumstances of its use, including the intent and ability of the user, the degree of force, the part of the body to which it was applied, and the extent of the actual injuries that were inflicted. *State v. Holmes*, 106 Wn. App. 775, 781-82, 24 P.3d 1118 (2001); *State v. Barragan*, 102 Wn. App. 754, 761, 9 P.3d 942 (2000). "Ready capability is determined in relation to surrounding circumstances, with reference to potential substantial bodily harm." *State v. Shilling*, 77 Wn. App. 166, 171, 889 P.2d 948 (1995). To be deemed a deadly weapon, a defendant must demonstrate

5

some manifestation of willingness to use the weapon or instrument to cause death or substantial bodily harm. *State v. Gotcher*, 52 Wn. App. 350, 354, 759 P.2d 1216 (1988).

Viewing the evidence in a light most favorable to the State, a rational juror could conclude that the instrument used by Mr. Linares was readily capable of causing death or substantial bodily harm. Although no weapon was ever recovered, the photographs and description of Mr. Ruiz's wound indicate Mr. Linares used a knife or sharp instrument, about one-half inch wide, to pierce through Mr. Ruiz's shirt and stab him in the back. Also, the facts show that this assault was likely gang motivated, e.g., Mr. Linares mistakenly believing Mr. Ruiz was a member of a rival gang, which evidences Mr. Linares's intent to harm Mr. Ruiz. As was testified to at trial, Mr. Linares's question, "do you gang bang," 2 RP (Apr. 12, 2017) at 391, indicates Mr. Linares was trying to assess whether Mr. Ruiz was a gang rival and was looking to instigate an act of violence.

While no depth measurement was taken in regard to Mr. Ruiz's wound, the evidence was uncontested that Mr. Ruiz had suffered a stab wound, not an incised wound.[1] This raised concerns about damage to arteries or vital organs. Even though Mr. Ruiz was not seriously injured, there was ample evidence for the jury to find that

---

[1] Stab wounds are deeper than they are long. Incised wounds are superficial injuries that are longer than deep. *See Bien v. Smith*, 546 F. Supp. 2d 26, 35-36 (E.D. N.Y. 2008).

this outcome was due more to luck than because of the nature of Mr. Linares's weapon

or conduct. Sufficient evidence justified Mr. Linares's conviction.

> *Deadly weapon requirement in the context of the sentence enhancement*

The jury also found, by special verdict, that Mr. Linares used a deadly weapon

when he committed the second degree assault. This finding was based on a slightly

different deadly weapon definition. Pertinent to this case, to prove the use of "deadly

weapon" as necessary for a sentence enhancement, the State must establish that (1) the

instrument used by Mr. Linares had the "capacity to inflict death" and (2) Mr. Linares

used the instrument in a manner "likely to produce" death or in a way that "may easily

and readily produce death." RCW 9.94A.825; *State v. Peterson*, 138 Wn. App. 477, 484,

157 P.3d 446 (2007).

Sufficient evidence justified the jury's determination that the instrument used by

Mr. Linares met the two criteria of a deadly weapon. The instrument clearly had the

capacity to inflict death, given it was sharp enough to pierce Mr. Ruiz's shirt and skin. In

addition, Mr. Linares used the instrument in a manner likely to cause death. Mr. Linares

stabbed Mr. Ruiz in the back. In so doing, he risked injury to Mr. Ruiz's arteries and

internal organs. A jury could rightly view Mr. Linares's conduct as more serious than an

intentional aggravated battery. It was an attempted assassination. The fact that Mr.

7

Linares did not succeed in killing Mr. Ruiz does not change the nature of his conduct.

Based on the facts produced at trial, the deadly weapon enhancement was justified.

*Deadly weapon enhancement term exceeds statutory maximum*

Mr. Linares argues, and the State concedes, that the trial court's imposition of 24 months of confinement for the deadly weapon enhancement exceeded the statutory maximum for a deadly weapon enhancement for his second degree assault conviction. Sentencing errors resulting in unlawful sentences may be raised for the first time on appeal. *State v. Bahl*, 164 Wn.2d 739, 744, 193 P.3d 678 (2008). Whether a sentencing court exceeded its statutory authority under the Sentencing Reform Act of 1981 (SRA), chapter 9.94A RCW, is an issue of law reviewed de novo. *State v. Murray*, 118 Wn. App. 518, 521, 77 P.3d 1188 (2003). "'When a trial court exceeds its sentencing authority under the SRA, it commits reversible error.'" *In re Postsentence Review of Cage*, 181 Wn. App. 588, 594, 326 P.3d 805 (2014) (quoting *State v. Hale*, 94 Wn. App. 46, 53, 971 P.2d 88 (1999)).

Second degree assault is a class B felony. RCW 9A.36.021(2)(a). Deadly weapon enhancements for class B felonies are limited to a term of confinement of one year. RCW 9.94A.533(4)(b). This term can be doubled if the defendant "has previously been sentenced for any deadly weapon enhancements." RCW 9.94A.533(4)(d). However, nothing in the record before us indicates this provision is applicable.

8

No. 35374-5-III
*State v. Linares*

Therefore, as both Mr. Linares and the State agree, this matter must be remanded for the trial court to correct the term of confinement for Mr. Linares's deadly weapon enhancement.

## CONCLUSION

Mr. Linares's conviction is affirmed. The 24-month term of confinement for the deadly weapon enhancement is stricken. This matter is remanded for imposition of a 1-year term for the deadly weapon enhancement. Mr. Linares's presence is not necessary at any proceeding for this correction to his sentence.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____, A.C.J.
Pennell, A.C.J.

WE CONCUR:

_____              _____
Korsmo, J.                             Fearing, J.

9