# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 58085-3-II |
| Respondent, | |
| v. | UNPUBLISHED OPINION |
| WILLIAM A. FORSMARK, | |
| Appellant. | |

CHE, J. — William Allen Forsmark appeals a bench trial conviction for felony harassment with a deadly weapon enhancement.

Forsmark's neighbor, Dennis Barnes, called 911 after Forsmark twice threatened to kill Barnes while holding a walking stick and a "dead blow" mallet. While making the threats, Forsmark walked towards Barnes so that the two were only six feet apart. The trial court found the mallet qualified as a deadly weapon.

Forsmark argues, among other things, that the trial court violated his First Amendment right by finding him guilty of felony harassment when the State failed to prove and the fact-finder failed to find he made a "true threat" with the subjective recklessness requirement that is required under *Counterman v. Colorado*,[1] a controlling opinion issued after the trial but before the resolution of this appeal.

---

[1] 600 U.S. 66, 143 S. Ct. 2106, 216 L.Ed.2d 775 (2023).

We hold that, because our prior construction of a "true threat," applicable during Forsmark's trial, changed, we reverse Forsmark's conviction and remand to the trial court for the limited purpose of determining whether there was a "true threat" based upon the evidence presented at trial and under the standard articulated in *Counterman*. Because Forsmark's sufficiency of the deadly weapon enhancement evidence may be implicated under the trial court's "true threat" determination under *Counterman*, we also hold that substantial evidence supports the trial court's finding that Forsmark was armed with a deadly weapon.

FACTS

Forsmark and Barnes were next-door neighbors. In December of 2022, an altercation between the two neighbors occurred.

According to Barnes, he heard a skirmish outside of his residence and he noted that Forsmark and another neighbor were in an altercation. Barnes went outside, watched, and heard Forsmark say he "was going to kill [the neighbors]." Rep. of Proc. (RP) at 43. Barnes made his first 911 call and then returned to inside his home. Forsmark knocked on Barnes's door and said he wanted to talk. After Barnes told Forsmark to go away, Forsmark hit Barnes's door with the walking stick. Barnes stepped outside and saw Forsmark ten-to-twelve-feet away, near the end of his home. Forsmark began cussing at Barnes and said that he would kill Barnes too. Barnes responded, "go ahead." RP at 46. Forsmark then repeated "I'll kill you" while approaching to within six feet of Barnes with the stick in one hand and a mallet in the other hand. RP at 46. Forsmark did not swing the mallet, but held it in a threatening manner. Barnes was concerned Forsmark would carry out the threat to kill him and he was scared for his life. Barnes then walked back inside his home and again called 911.

2

According to Forsmark, he approached Barnes's home to speak to Barnes because "we had been neighbors, and quasi-friends. I was just stopping by just to chat with him." RP at 57. Forsmark denied arguing with Barnes and denied making any threats towards Barnes, including any threat to kill him. While Forsmark agreed that he had both the stick and mallet in his hands and that he got closer to Barnes throughout their interaction, Forsmark never threatened to injure Barnes with either object. Instead, Forsmark described the stick as a walking stick he used for balance. Forsmark carried the mallet "for personal protection" "to protect [him] from bad guys and dogs and so forth." RP at 59.

Officer Stigall and a sergeant responded to Barnes's 911 call. Officer Stigall, upon placing Forsmark in custody, found a mallet in the back of Forsmark's pants, tucked into his waistband. Officer Stigall described the mallet as heavy, weighing a little over two-and-a-half pounds, and typically used for construction purposes. Officer Stigall also found a wooden stick, approximately four feet long and one-and-a-half-inch thick, near where the officers located Forsmark. Both objects were admitted into evidence.

The State charged Forsmark with felony harassment with a deadly weapon enhancement. Witnesses testified consistently with the facts above.

After a bench trial, the trial court found Forsmark guilty as charged and entered written findings of fact and conclusions of law. The trial court found that Forsmark unlawfully threatened to kill Barnes twice and that Barnes reasonably felt threatened and believed Forsmark's threat would be carried out due to Barnes witnessing Forsmark acting aggressively prior to their interaction, the proximity and manner of their interaction, and the fact that Forsmark threated Barnes directly.

3

Additionally, the trial court made findings as to the mallet, which had imprinted on it "dead blow," indicating the mallet head provided "extra heft when swung in a certain manner." Clerk's Papers (CP) at 12. The trial court found Forsmark's mallet was in his possession to use for his personal protection. Moreover, the trial court found a sufficient nexus between the mallet, Forsmark, and the crime and, thus, the mallet "was capable of being used and satisfies the elements of the deadly weapon enhancement." CP at 12. The trial noted Barnes's testimony that Forsmark held the mallet during the interaction and that Forsmark had approached Barnes in a threatening manner.

Forsmark appeals.

## ANALYSIS

### I. FIRST AMENDMENT

Forsmark argues that his conviction is unconstitutional because the trial court did not find that Forsmark made a "true threat" per the subjective recklessness requirement under *Counterman*. Br. of Appellant at 18, 20-21. We agree.

A. *Legal Principles*

It is the State's burden to prove all essential elements of a crime beyond a reasonable doubt. *In re Pers. Restraint of Arntsen*, 2 Wn.3d 716, 724, 543 P.3d 821 (2024).

Under RCW 9A.46.020, a person is guilty of harassment if they, without lawful authority, (1) knowingly threaten "[t]o cause bodily injury immediately or in the future to the person threatened or to any other person," and (2) their words or conduct place "the person threatened in

reasonable fear that the threat will be carried out."[2] (1)(a)(i), (b). The crime of harassment rises to felony harassment if a person also "harasses another person . . . by threatening to kill the person threatened." RCW 9A.46.020(2)(b).

As written, Washington's harassment statute criminalizes threats, a form of pure speech and some of which could be constitutionally-protected speech. *See State v. Williams*, 144 Wn.2d 197, 207-208, 26 P.3d 890 (2001) ("On its face [RCW 9A.46.020] criminalizes a form of pure speech: threats" and "the criminal harassment statute prohibits at least some constitutionally protected speech."). Accordingly, "it 'must be interpreted with the commands of the First Amendment clearly in mind.'" *State v. Kilburn*, 151 Wn.2d 36, 42, 84 P.3d 1215 (2004) (quoting *Williams*, 144 Wn.2d at 206.

True threats of violence are not protected by the First Amendment. *State v. Calloway*, 31 Wn. App. 2d. 405, 416, 550 P.3d 77, *review granted*, 3 Wn.3d 1031 (2024). Therefore, we have held that "only true threats may be punished for the crime of felony harassment." *In re Det. of C.A.A.*, 31 Wn. App. 2d 816, 824, 553 P.3d 88 (2024).

A "true threat" is a "'serious threat, not one said in jest, idle talk, or political argument.'" *Id*. "Stated another way, communication that 'bear the wording of threats but which are in fact merely jokes, idle talk, or hyperbole' are not true threats." *State v. Locke*, 175 Wn. App. 779, 790, 307 P.3d 771 (2013) (quoting *State v. Schaler*, 169 Wn.2d 274, 283, 236 P.3d 858 (2010)). We review the facts and circumstances surrounding the statements versus merely relying on the "'literal translation of the words spoken'" to determine whether a statement is a true threat. *Id*.

---

[2] The legislature has amended RCW 9A.46.020 twice since February 2023; however, neither substantively changed the relevant subsections. Laws of 2023, ch. 102, § 16 (effective July 23, 2023); Laws of 2024, ch. 292, § 1 (effective March 26, 2024).

Prior to June 2023, during Forsmark's trial, the Washington Supreme Court "defined a true threat as 'a statement made in context or under such circumstances wherein *a reasonable person* would foresee that the statement would be interpreted . . . as a serious expression of intention to inflict bodily harm upon or to take the life of' another person." *Calloway*, 31 Wn. App. 2d. at 417 (emphasis added) (alteration in original) (internal quotation marks omitted) (quoting *State v. Trey M.*, 186 Wn.2d 884, 894, 384 P.3d 474 (2016)). This essentially required the State to prove a mental state akin to negligence. *See id.* at 418 ("This definition of a true threat 'requires the defendant to have some mens rea as to the result of the hearer's fear: simple negligence.'") (quoting *Schaler*, 169 Wash.2d at 287).

But in June 2023, after Forsmark's bench trial, the United States Supreme Court decided *Counterman* and held that the First Amendment instead "demands 'a *subjective* mental-state requirement'" of at least recklessness. *Calloway*, 31 Wn. App. 2d. at 416 (emphasis added) (quoting *Counterman*, 600 U.S. at 75). *Counterman* raised the level of culpability required to prove that a "true threat" occurred and, therefore, made our pre-*Counterman* "true threat" definition in conflict with the First Amendment. *See Calloway*, 31 Wn. App. 2d at 418-19 ("Washington's pre-*Counterman* true threat limitation on RCW 9A.46.020 contravenes the First Amendment because it does not go far enough.").

In light of *Counterman*, to ensure constitutionally-protected speech is not criminalized through the harassment statute, the State now is required to prove, in addition to proving the statutory elements, "'that the *defendant*'—not just a reasonable person in their position— 'consciously disregarded a substantial risk that [the] communications would be viewed as threatening violence.'" *Calloway*, 31 Wn. App. 2d. at 419-20 (alteration in original) (quoting

6

*Counterman*, 600 U.S. at 69). This requirement is known as a "recklessness" requirement. *See Calloway*, 31 Wn. App. 2d at 416, 418 (describing how *Counterman* announced a "recklessness requirement" and how the new standard involves a higher level of culpability from a mental state of negligence). Establishing recklessness requires proving that the defendant "was at least 'aware that others could regard [the] statements as threatening violence and [delivered] them anyway.'" *Calloway*, 31 Wn. App. 2d. at 420 (quoting *Counterman,* 600 U.S. at 79) (internal quotation marks omitted). Because *Counterman* announced a new constitutional standard from the United States Supreme Court governing criminal prosecutions, its "true threats" recklessness requirement applies to criminal cases not yet final on appeal. *Calloway*, 31 Wn. App. 2d at 420, 423 (citing *State v. Harris*, 154 Wn. App. 87, 92, 224 P.3d 830 (2010)).

B.        *A Lack of Findings Exists to Determine This Sufficiency of the Evidence Challenge*

At the time of Forsmark's trial, *Counterman* had not yet been decided and Washington law defined a "true threat" under the reasonable person standard of recklessness which *Counterman* held as unconstitutional. *Calloway*, 31 Wn. App. 2d at 418. Therefore, the trial court did not make any "true threat" finding consistent with the standard required by *Counterman* for this court to determine Forsmark's true threat sufficiency challenge. And because *Counterman* was decided after Forsmark's trial but before the end of his right to appeal, Forsmark is owed the benefit of this change in law. *Harris*, 154 Wn. App. at 92 ("Generally, United States Supreme Court decisions that announce new constitutional rules governing criminal prosecutions apply retroactively to all criminal cases not yet final on appeal."). Accordingly, we reverse Forsmark's conviction and remand back to the trial court for the limited

purpose of determining whether there was a "true threat" based upon the evidence presented at trial and under the standard articulated in *Counterman*.

## II. SUFFICIENCY OF THE DEADLY WEAPON EVIDENCE

Forsmark assigns error to the trial court's Finding of Fact 14 and argues that the State failed to present sufficient evidence to support the deadly weapon enhancement. We disagree.

### A. *Legal Principles*

To determine whether the facts are sufficient as a matter of law to prove that the defendant was armed, we engage in de novo review. *State v. Sassen Van Elsloo*, 191 Wn.2d 798, 825, 425 P.3d 807 (2018). In determining the sufficiency of the evidence, we must evaluate "'whether any rational trier of fact could have found the elements of the charged crime beyond a reasonable doubt.'" *Id.* at 826 (quoting *State v. Brown*, 162 Wn.2d 422, 428, 173 P.3d 245 (2007); *State v. Peterson*, 138 Wn. App. 477, 481, 157 P.3d 446 (2007). We view the evidence in the light most favorable to the State, including drawing all reasonable inferences in its favor too. *Id.*; *see Peterson*, 138 Wn. App. at 481.

The State has the burden of proving that the defendant "was armed with a deadly weapon at the time of the commission of the crime." *State v. Barnes*, 153 Wn.2d 378, 383, 103 P.3d 1219 (2005).

### B. *Substantial Evidence Supports the Mallet Being a Deadly Weapon*

Forsmark contends that the State did not prove that Forsmark "'used' the mallet in a manner 'likely to produce or [that] may easily and readily produce death.'" Br. of Appellant at 27 (quoting RCW 9.94A.825). Thus, Forsmark assigns error to the trial court's Finding of Fact 14. We disagree.

Under RCW 9.94A.825, an object can fall within the statute's definition of a "deadly weapon" in two ways. *Peterson*, 138 Wn. App. at 482. First, an object can be a *per se* deadly weapon if it is included in the statutory list of RCW 9.94A.825. *Id*. Alternatively, if the object is not one specifically listed in the statute, it nevertheless can meet the statute's general definition by having "the capacity to inflict death and from the manner in which it is used, is likely to produce or may easily and readily produce death." *Id*. at 484; RCW 9.94A.825.[3]

In *Peterson*, we clarified that the "second criterion—'from the manner in which it is used, is likely to produce or may easily and readily produce death,'[]—implies the presence of another person against whom [the defendant] could have readily used the [weapon] while committing the [crime]." *Id*. Peterson was convicted of first degree malicious mischief for using a knife to remove a stereo from another's car in a deserted parking lot. *Id*. at 481, 483. We held that a knife used by Peterson while cutting stereo wires out of a car did not meet the deadly weapon statute's second requirement with regards to the crime of malicious mischief because there was "no evidence that any other person was present or nearby while Peterson was using the knife to cut the stereo wires or, from Peterson's 'manner of use' of the knife, that he would have used it to assault [another person] had he approached Peterson while . . . cutting the stereo wires." *Id*. at 484.

Conversely, here, a fair-minded person could have found, viewing the evidence in the light most favorable to the State, that Forsmark used the mallet in a manner that could easily and

---

[3] Forsmark appears to not dispute and provides no argument to the contrary on appeal that the mallet meets the first criteria: that the object had the capacity to inflict death. Thus, we only address the second criteria. *State v. Hand*, 199 Wn. App. 887, 901, 401 P.3d 367 (2017), *aff'd*, 192 Wn.2d 289, 429 P.3d 502 (2018) ("We do not make arguments for the parties.").

readily produce death. Unchallenged on appeal and, thus, treated as a verity, the trial court found the mallet within Forsmark's possession for use to protect himself to be a "dead blow" mallet, one designed to provide "extra heft when swung in a certain manner." CP at 12; *State v. Homan*, 181 Wn.2d 102, 105-06, 330 P.3d 182 (2014) ("We treat unchallenged findings of fact and findings of fact supported by substantial evidence as verities on appeal.").

Unlike the circumstances in *Peterson*, here Forsmark was within six-to-twelve feet of Barnes when Forsmark said he was going to kill Barnes. Barnes testified that Forsmark held the mallet in a threatening manner when Forsmark twice stated that he was going to kill him. Additionally, Forsmark even admitted that he carried the mallet around specifically for personal protection purposes, including to protect himself from other people. While there was no evidence that Forsmark swung the mallet, the statute does not require that specific act. Instead, the question here is whether a fair-minded trier of fact could have found that holding the "dead blow" mallet in a threatening manner and under the circumstances—threatening multiple times to kill Barnes, the distance between Forsmark and Barnes, and the fact that Forsmark moved closer to Barnes while holding the mallet in Forsmark's hand during the interaction—met RCW 9.94A.825's second criteria.

We hold the State presented sufficient evidence for a rational, fair-minded trier of fact to conclude that Forsmark used the mallet in a manner that was likely to produce or may easily and readily produce death and, thus, that the mallet met RCW 9.94A.825's definition of a deadly weapon. Relatedly, we hold that substantial evidence supported the trial court Finding of Fact 14.

C. *Substantial Evidence Supports Forsmark Being Armed with the Deadly Weapon*

Forsmark next argues that the "State failed to establish a nexus between the deadly weapon and the threat" in order for the deadly weapon enhancement to be applied to the harassment conviction. Br. of Appellant at 30. We disagree.

It is well-established in Washington case law that "[t]he presence, close proximity, or constructive possession of a weapon at the scene of a crime is, by itself, insufficient to show that the defendant was armed." *Sassen Van Elsloo*, 191 Wn.2d at 826 (citing *Barnes*, 153 Wn.2d 378, 383, 103 P.3d 1219 (2005). Thus, to establish that the defendant was armed with a deadly weapon, the State must prove "(1) that [the deadly weapon] was easily accessible and readily available for offensive or defensive purposes during the commission of the crime and (2) that a nexus exists among the defendant, the weapon, and the crime." *Id.* (citing *State v. Eckenrode*, 159 Wn.2d 488, 493, 150 P.3d 1116 (2007) (plurality opinion)). The nexus requirement serves to place "'parameters . . . on the determination of when a defendant is armed, especially in the instance of a continuing crime.'" *Id.* at 827 (quoting *State v. Gurske*, 155 Wn.2d 134, 140, 118 P.3d 333 (2005)). And it aims to minimize any "'risk of punishing a defendant . . . for having a weapon unrelated to the crime.'" *Gurske*, 155 Wn.2d at 140. When evaluating whether such a nexus existed, this court looks to three factors: the nature of the crime, the type of weapon, and the circumstances under which the weapon was found. *Sassen Van Elsloo*, 191 Wn.2d at 827.

Here, viewing all evidence and reasonable inferences in favor of the State, the State presented sufficient evidence to persuade a fair-minded person that Forsmark was armed with the mallet. As discussed above, the "dead blow" mallet was easily accessible and readily available for defensive, and inferentially for offensive, purposes during Forsmark's interaction with Barnes.

Additionally, the nature of the crime, the type of weapon, and the circumstances under which the mallet was found all support a nexus between Forsmark, the mallet, and his felony harassment conviction. Forsmark was convicted of felony harassment for which a fair-minded trier of fact could have found the presence of the mallet central to the circumstances which made Barnes feel reasonably threatened. Forsmark holding the mallet in a threatening manner while making the statements, Forsmark moving closer to Barnes throughout the interaction, "dead blow" inscribed on the mallet, and the trial court's finding that, upon "heft[ing] the mallet," it was "very concerned by [the] mallet" created substantial evidence that mallet was there to use in the crime. There is no evidence that the mallet was only present, in close proximity, or constructively possessed. Instead, Barnes testified that he saw the mallet in Forsmark's hands and Forsmark testified that he had the mallet in his waistband—the same place law enforcement officers found the mallet when they arrested him.

When we consider the evidence in the light most favorable to the State, sufficient evidence supported the mallet qualifying as a deadly weapon because Forsmark used the mallet in a manner that could have at least easily and readily produced death. Also, a rational, fair-minded trier of fact could have found that the mallet was more than merely present, in close proximity, or just constructively possessed at the scene of Forsmark and Barnes's dispute. We hold that substantial evidence supported the trial court's finding that Forsmark was armed with a deadly weapon.

## CONCLUSION

We hold that, because our prior construction of a "true threat," applicable during Forsmark's trial, changed, we reverse Forsmark's conviction and remand to the trial court for the

No. 58085-3-II

limited purpose of determining whether there was a "true threat" based upon the evidence presented at trial and under the standard articulated in *Counterman*. Because Forsmark's sufficiency of the deadly weapon enhancement challenge may be implicated under the trial court's "true threat" determination under *Counterman*, we also hold that substantial evidence supports the trial court's finding that Forsmark was armed with a deadly weapon.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Che, J.

We concur:

Lee, P.J.

Price, J.