

**Filed**
Supreme Court of Guam, Clerk of Court

# IN THE SUPREME COURT OF GUAM

**PEOPLE OF GUAM,**
Plaintiff-Appellee,

**v.**

**EMMANUEL MANNY RESELAP,**
Defendant-Appellant.

Supreme Court Case No.: CRA20-004
Superior Court Case No.: CF0322-19

## OPINION

## Cite as: 2022 Guam 2

Appeal from the Superior Court of Guam
Argued and submitted on February 4, 2021
Via Zoom video conference

Appearing for Defendant-Appellant:
F. Randall Cunliffe, *Esq.*
Cunliffe & Cook, P.C.
210 Archbishop Flores St., Ste. 200
Hagåtña, GU 96910

Appearing for Plaintiff-Appellee:
Christine Santos Tenorio, *Esq.*
Assistant Attorney General
Office of the Attorney General
Prosecution Division
590 S. Marine Corps Dr., Ste. 901
Tamuning, GU 96913

**E-Received**
3/23/2022 4:44:21 PM

BEFORE: F. PHILIP CARBULLIDO, Chief Justice; ROBERT J. TORRES, Associate Justice; KATHERINE A. MARAMAN, Associate Justice.

**CARBULLIDO, C.J.:**

[1]     Defendant-Appellant Emmanuel Reselap appeals from a judgment of conviction finding him guilty of Aggravated Assault (As a Third Degree Felony), two counts of Terrorizing (As a Third Degree Felony), two counts of Criminal Mischief (As a Third Degree Felony), and one count of Family Violence (As a Misdemeanor).  For all felony charges, Reselap was also found guilty of attached Special Allegations for Possession or Use of a Deadly Weapon in the Commission of a Felony.  The trial court sentenced Reselap to a term of incarceration, a $5,000.00 fine, and full restitution to the victims.  We affirm the judgment in part, vacate in part, and remand the case to the trial court to conduct evidentiary hearings for the fine and restitution sentences.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

[2]     In June 2019, Defendant-Appellant Emmanuel Manny Reselap ("Reselap") went to the beach and consumed alcohol with T.R., E.R., and Jordan Rachulap.[1]  Upon returning to the apartment of T.R. and E.R.'s mother, Reselap punched and kicked his girlfriend, Durviann Suda. Family members, including E.R., intervened.  Reselap was eventually taken outside, where he had an altercation with E.R.  The two fought, and because of this physical confrontation, Reselap lost consciousness.  When Reselap regained consciousness a few minutes later, he took a machete from a car and hit E.R.'s mother's car with it.  E.R. tried to take the machete away from Reselap.  The

---

[1] Rule 3 of the Guam Rules of Appellate Procedure provides:

> All motions, briefs, opinions, and orders of the court shall refer to a child, a juvenile offender, a victim of a sex crime, or a party to an adoption proceeding, by initials only.  To the extent that the identity of a party subject to the protection of this rule could be revealed by reference to another party, e.g., the mother or father of a child, that party should also be identified by initials or by familial relationship, if possible.

Guam R. App. P. 3(e)(3)(B).

two men wrestled for control over the machete, and during the struggle, the machete cut E.R., causing a five-inch-wide wound "directly into his abdomen." Transcript ("Tr.") at 166-69 (Jury Trial, Aug. 26, 2019). The injury was so severe that the emergency medical technician, who treated E.R. at the scene, described bandaging "the wound just to keep any of his internal organs from eviscerating out." *Id.* at 169.

[3] After the struggle with E.R., the three others—Reselap, Jordan Rachulap, and T.R.—attacked cars passing on the road near the apartment. They used machetes to break the lights and slash through the body of several cars. The ensuing damage included a shattered rear window and cuts and dents on doors, windows, and trunks of cars.

[4] Several victims described the attack during the jury trial. One victim, who was inside one of the vehicles, described the individuals as "pouncing on the vehicle and on the door" and "attacking the vehicle, all around the vehicle." *Id.* at 119-20. She then then described "some attempt to open the door" and then the individuals going "right up to [her] window" where she saw "terror in [the attackers'] faces." *Id.* She also described Reselap as "screaming," though she did not know what he was saying. *Id.* at 127, 133.

[5] Another victim, who identified Reselap as the man with the machete, described the scene:

> He was walking toward me. And he was walking on the right side of the road, swinging, slicing a machete, and then I saw him hit the rear -- right rear of the truck, pick up truck in front of me. And I thought, oh my God, what am I in for? . . . And I watched him slowly walk from that pick up truck back towards my car, swinging the machete, slicing the air with it.
>
>        . . . .
>
> [H]e got to the front right of my car, and stood there, and then he raised it up. . . . [A]nd all of a sudden -- down the machete came and scared the bejesus out of me.

Tr. at 208-09 (Trial, Aug. 27, 2019).

[6]      Reselap was charged with Attempted Murder (As a First Degree Felony) in violation of 9 GCA §§ 16.40(a)(1) and 13.10, Aggravated Assault (As a Second Degree Felony) in violation of 9 GCA § 19.20(a)(1) and (b), Aggravated Assault (As a Third Degree Felony) in violation of 9 GCA §§ 19.20(a)(3), (b), and 80.30, three counts of Terrorizing (As a Third Degree Felony) in violation of 9 GCA § 19.60(a) and (b), and three counts of Criminal Mischief (As a Third Degree Felony) in violation of 9 GCA §§ 34.50(d) and 34.60(a).  All but the third Terrorizing charge and the third Criminal Mischief charge had an attached Special Allegation for Possession or Use of a Deadly Weapon in the Commission of a Felony in violation of 9 GCA § 80.37.  Reselap was also charged with Family Violence (As a Misdemeanor) in violation of 9 GCA §§ 30.10(a)(1) and 30.20(a).

[7]      A jury of twelve returned guilty verdicts for Charge Three of Aggravated Assault (As a Third Degree Felony) with attached Special Allegation of Possession or Use of a Deadly Weapon in the Commission of a Felony; Charge Four, counts one and two of Terrorizing (As a Third Degree Felony) with attached Special Allegation of Possession or Use of a Deadly Weapon in the Commission of a Felony; Charge Five, counts one and two of Criminal Mischief (As a Third Degree Felony) with attached Special Allegation of Possession or Use of a Deadly Weapon in the Commission of a Felony; and Charge Six of Family Violence (As a Misdemeanor).  A judgment of acquittal was entered for the remaining charges.

[8]      Reselap stipulated that he was on pretrial felony release during the commission of these offenses and waived his rights under *Apprendi v. New Jersey*, 530 U.S. 466 (2000).  The court entered a judgment of guilty for Notice of a Commission of Felony while on Felony Release.

[9]      Besides incarceration, Reselap was sentenced to pay a fine of $5,000.00 and full restitution to the victims.  During the sentencing hearing, Reselap addressed specific victims, saying: "Mr.

Atalig, Mr. Shadel, Ms. Lee and Ms. Pastrana, I am sorry for what I did and if I am able to pay you back for the damages to your car -- cars I will." Tr. at 31 (Sentencing, Feb. 12, 2020). Reselap's counsel later said, "Emmanuel also agreed to all restitution I think in the statement." *Id.* at 36. The court replied, "Significantly, he did." *Id.* When discussing the fine, the court said, "For the fine it would be for each of the special allegations a thousand dollars would be applied. . . . That is $5,000 in fine total, 1,00[0] for each of [the special allegations]." *Id.* at 70.

**[10]** The Judgment specifically provided that the $5,000.00 fine "be paid towards the Criminal Injuries Compensation Fund pursuant to 9 G.C.A. 80.37(a)(2)." Record on Appeal ("RA"), tab 198 at 5 (Judgment, Mar. 6, 2020). Regarding restitution, the Judgment stated that Reselap "shall be held liable for full restitution, if any, to the victims, E.R., Blas Atalig, David Shadel, and Durviann Suda. However, restitution payments shall be made to reimburse the Criminal Injuries Compensation Fund if payments are made to any victims prior." *Id.* at 5-6.

**[11]** Reselap timely filed a Notice of Appeal.

## II. JURISDICTION

**[12]** This court has jurisdiction over appeals from a final judgment of the Superior Court under 48 U.S.C.A. § 1424-1(a)(2) (Westlaw through Pub. L. 117-80 (2021)) and 7 GCA §§ 3107(b) and 3108(a) (2005).

## III. STANDARD OF REVIEW

**[13]** Claims of double jeopardy are questions of law reviewed *de novo*. *See People v. Camacho*, 2015 Guam 37 ¶ 10 (citing *People v. San Nicolas*, 2001 Guam 4 ¶ 8). "When a double jeopardy claim is raised for appellate review, we are also required to discern legislative intent under the applicable charging statutes." *People v. Afaisen*, 2016 Guam 31 ¶ 9.

**[14]** We review *de novo* issues of legislative intent and statutory interpretation. *San Nicolas*, 2001 Guam 4 ¶ 9; *People v. Quichocho*, 1997 Guam 13 ¶ 3.

**[15]** Claims of insufficiency of evidence are matters of law reviewed *de novo*. *Camacho*, 2015 Guam 37 ¶ 9.

**[16]** We review the sentence imposed by the trial court for an abuse of discretion. *People v. Manibusan*, 2016 Guam 40 ¶ 12 (quoting *People v. Joshua*, 2015 Guam 32 ¶ 20). "Reviewing the imposed sentencing terms also requires statutory interpretation[,] which we review *de novo*." *Id.*

**[17]** We review evidentiary rulings for restitution orders for abuse of discretion. *People v. Mallo*, 2008 Guam 23 ¶ 12.

## IV. ANALYSIS

### A. The Sentencing Enhancements for the Aggravated Assault Charges Do Not Violate Double Jeopardy

**[18]** Reselap argues the Special Allegation for Possession or Use of a Deadly Weapon in the Commission of a Felony sentence enhancement attached to his conviction under 9 GCA § 19.20, Aggravated Assault (As a Third Degree Felony), violates the Double Jeopardy Clause of the Fifth Amendment. Appellant's Br. at 16 (Oct. 19, 2020). "The Double Jeopardy Clause of the Fifth Amendment, made applicable to Guam by the Organic Act of Guam, provides that no person shall 'be subject for the same offence to be twice put in jeopardy of life or limb.'" *Afaisen*, 2016 Guam 31 ¶ 12 (quoting *United States v. Tateo*, 377 U.S. 463, 465 (1964)); *see also* 48 U.S.C.A. § 1421b(u) (Westlaw through Pub. L. 117-80 (2021)). "It is well established that the Double Jeopardy Clause protects against successive prosecutions as well as successive criminal punishments for the same crime." *San Nicolas*, 2001 Guam 4 ¶ 8 (citing cases).

**[19]** Reselap contends that 9 GCA § 19.20 is an enhanced version of 9 GCA § 19.30, Assault, with the additional element of a deadly weapon as the only difference that elevates 9 GCA § 19.20

to a felony charge. Appellant's Br. at 16-17. He argues that the prohibition against double jeopardy is violated because the special allegation is an enhancement on an already enhanced charge for use of a deadly weapon. *Id.* We disagree. We reject Reselap's contention that 9 GCA § 19.20 is an "enhanced" version of 9 GCA § 19.30.[2] *See* Appellant's Br. at 16-19; Appellant's Reply Br. at 3 (Dec. 2, 2020). On the contrary, section 19.30 is a lesser included offense of section 19.20, and Reselap was charged with and convicted of violating only section 19.20. Had Reselap been convicted under both sections 19.20 and 19.30, this would have been a double jeopardy violation; however, such was not the case.

[20]    The People cite the case of *People v. Moses*, 2016 Guam 17, and *People v. Afaisen*, 2016 Guam 31, arguing that this court has established that sentencing enhancement to a charge of aggravated assault does not violate double jeopardy. Appellee's Br. at 5-6 (Nov. 18, 2020). In *Moses*, the defendant was charged with Second Degree Robbery under 9 GCA § 40.20(a)(3) with an attached special allegation under 9 GCA § 80.37. 2016 Guam 17 ¶ 4. Section 40.20(a)(3) is the commission of a theft by a person who is "armed with or displays what appears to be explosives or a deadly weapon." 9 GCA § 40.20(a)(3) (2005). Moses claimed that the attached special allegation for the Possession or Use of a Deadly Weapon in the Commission of a Felony violated double jeopardy. *Moses*, 2016 Guam 17 ¶ 10. We disagreed, holding that "legislatures are still free to enact a double penalty in a statute for the same conduct; the Double Jeopardy Clause merely prohibits a double penalty if it was not intended to be duplicative." *Id.* (citing *Missouri v. Hunter*, 459 U.S. 359, 366 (1983)). We adopted the reasoning of the Ninth Circuit in *Guam v. Iglesias*, 839 F.2d 628 (9th Cir. 1988), where it held: "Based on this legislative omission and unambiguous

---

[2] Reselap himself implicitly acknowledges this by citing 8 GCA § 105.58 (Guilt of Included Offense Permitted: Defined) and 9 GCA § 1.22 (Prosecution for Conduct Which Constitutes More Than One Offense). *See* Appellant's Br. at 17 (Oct. 19. 2020).

language, the [Ninth Circuit] found that the [Guam] legislature intended for the special allegation to apply, even where the underlying felony included use of a deadly weapon as an element." 2016 Guam 17 ¶ 14 (citing *Iglesias*, 839 F.2d at 629).

[21]    We addressed the sentencing enhancement issue again in *Afaisen*, where the defendant was convicted of multiple attempted murder charges with attached special allegations under 9 GCA § 80.37.  2016 Guam 31 ¶ 1.  The defendant complained that the special allegations attached to each attempted murder conviction violated his double jeopardy protections.  *Id.* ¶¶ 27-28.  We disagreed and held, "Sentencing pursuant to section 80.37 is a sentencing enhancement and not an offense in and of itself. . . .  'Guam's purpose of enacting [9 GCA] § 80.37 was specifically to impose a penalty that would be in addition to the punishment for the underlying felony.'"  *Id.* ¶ 27 (alteration in original) (quoting *Guam v. Snaer*, 758 F.2d 1341, 1344 (9th Cir. 1985)).

[22]    In *Iglesias*, 839 F.2d 628, the Ninth Circuit held that a sentencing enhancement under 9 GCA § 80.37 may properly enhance a conviction under 9 GCA § 19.20(a)(3).  The *Iglesias* decision, responding to a similar argument Reselap brings in this appeal, held that when the legislature's intent is clear about the enhancement of a penalty, regardless of the underlying charge, this intent must be respected.  *See* 839 F.2d at 629-30.  The *Iglesias* court cited an earlier Ninth Circuit decision, *Guam v. Borja*, 732 F.2d 733, 736 (9th Cir. 1984), which held that 9 GCA § 80.37 expressed an unambiguous, clear intent to impose a sentencing enhancement when a weapon is used in the commission of a felony, without exception to the underlying felony.  *Iglesias*, 839 F.2d at 629-30

[23]    We find no compelling reason to deviate from our holdings in *Moses* or *Afaisen*.  Further, we remain convinced by the rationale in *Iglesias*.  Reselap asks us to reconsider the holdings because of a different definition of "offense" and "crime"; however, regardless of which

definitions we use, we have established that the Guam Legislature did not intend to construe sentencing enhancements as separate crimes and offenses. Consequently, we affirm the trial court's sentence enhancements related to Reselap's aggravated assault conviction as they do not violate his Fifth Amendment protections against double jeopardy.

**B. The Evidence Was Sufficient to Sustain a Conviction for Each Special Allegation**

[24]     Reselap argues there was insufficient evidence to support his convictions of the special allegations of possession or use of a deadly weapon, as pleaded in the indictment. Appellant's Br. at 18. He contends that the special allegations attached to the terrorizing and criminal mischief charges, which used the language "did knowingly and unlawfully possess or use a deadly weapon, that is, *a machete or a rock*, in the commission of a felony," required the People prove he had used both a machete and a rock. *Id.* at 18-20; RA, tab 97 (Am. Indictment, Aug. 30, 2019).

[25]     Upon a review of the entire record, we find a rational jury could have found Reselap guilty of the special allegations only for the use of a machete.

### 1.  Unanimity rule

[26]     First, we address Reselap's challenge to the language of the special allegations. He argues that, based on how the special allegations were pleaded, the prosecution was required to establish use of both a rock and a machete in the commission of the underlying felonies to ensure unanimity of the verdict, that the record does not reflect a unanimous verdict on this point, and this uncertainty is further compounded by failing to include a unanimity jury instruction. Appellant's Br. at 19-20.

[27]     When a criminal defendant claims there was insufficient evidence to sustain a conviction, we review the evidence in the light most favorable to the prosecution. *People v. Sangalang*, 2001

Guam 18 ¶ 20. This is a highly deferential standard where we determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id.*

[28]     The elements of the special allegation are that the defendant (1) knowingly and unlawfully (2) possessed or used (3) a deadly weapon, that is a machete or a rock, (4) in the commission of a felony. RA, tab at 97 (Am. Indictment). As the jury instructions presented two possible deadly weapons, we must assess not only whether the prosecution proved the use of a deadly weapon beyond a reasonable doubt, but using specifically one weapon, i.e., the machete. Reselap argues that the People failed to establish that both the rock and the machete were used during the underlying felonies to sustain a conviction with the attached special allegation as charged. Appellant's Br. at 19-20. We disagree. The People presented sufficient evidence that a rational trier of fact could find beyond a reasonable doubt that Reselap used solely the machete as a deadly weapon in committing the underlying felonies.

[29]     In *State v. Higgins*, the appellant argued that the jury instructions were void under the unanimity rule as they did not specify which "deadly weapon" the defendant used during the crime, and many potential deadly weapons were mentioned during the trial. 821 A.2d 964, 974-75 (N.H. 2003). The Supreme Court of New Hampshire found this argument unpersuasive, holding that the prosecution explicitly informed the jury several times, including during the closing arguments, which "deadly weapon" the defendant used to commit the criminal offenses. *Id.* The *Higgins* court emphasized that the information and testimony at trial, including during closing argument, may provide sufficient clarity to a jury to overcome any factual ambiguity created by disjunctive jury instructions. *Id.* at 975.[3]

---

[3] While this court has previously addressed the issue of disjunctive pleadings, *see, e.g.*, *People v. Torres*, 2014 Guam 8 ¶¶ 53-56, Reselap frames his challenge as a sufficiency of evidence issue and not as a case of disjunctive pleadings.

[30] We agree with the reasoning of the *Higgins* court. We conclude that the People did not have to prove that Reselap had used both a rock and a machete, and there was enough information for a jury to overcome any factual ambiguity. *See id.* at 975.

[31] During Reselap's trial, testimony included details about damage to the vehicles of Blas Atalig and David Shadel. Atalig testified that his truck's hood was damaged by a machete. Tr. at 186-87 (Jury Trial, Aug. 27, 2019). Shadel testified that the hood of his car was "sliced" by a machete. *Id.* at 209, 214-16. Testimony described the machete used to break lights and cut through the metal of several cars. Tr. at 121 (Jury Trial, Aug. 26, 2019). E.R. was "hacked" by a machete in his side, causing a five-inch-wide wound going "directly into his abdomen." *Id.* at 166-69. During T.R.'s testimony, the People asked which weapon was used by which person, and T.R. described himself as using a rock and Reselap as using a machete. *Id.* at 220-21.

[32] During the People's closing arguments, the prosecutor told the jurors that the special allegations against Reselap were for the use of a machete, not a rock. *See, e.g.*, Tr. at 15-19, 17 (Jury Trial, Aug. 30, 2019). The prosecutor reiterated this when he told the jury:

> [F]or terrorizing the special allegation on top of that is he used a machete to do it. I know it says in here ['] or rock.['] There was some confusion originally about who had the rock. It was always [T.R.]. [Reselap] never had a rock . . . . [S]o we know it's not a rock, is just a machete, okay, it was only a machete.

*Id.* at 19. This was again clarified when the prosecutor said, "[W]hat was the weapon used? It was a machete, not a rock, so special allegation using the machete . . . ." *Id.* at 19-20. The prosecutor emphasized there was no special allegation for the damage to another vehicle because Reselap used a lug nut wrench at that time, and not "the machete." *Id.* at 20-21.

[33] The People explicitly clarified for the jury that Reselap used a machete, not a rock. Given this repeated and unequivocal clarification about use of the machete provided to the jury, it is unconvincing that a reasonable juror would find Reselap guilty of the special allegation under the

"rock" theory.  Thus, reviewing the entire record in the light most favorable to the prosecution, we find that a rational jury could have only found that the essential element of the sentencing enhancement, using a machete and only a machete as a deadly weapon, was proven beyond a reasonable doubt.  *See Sangalang*, 2001 Guam 18 ¶ 21.  We affirm the findings of the trial court.

### 2.  Use of the machete as a deadly weapon

[34]    We turn now to whether the machete, as used, satisfies the definition of deadly weapon under Guam law.  A deadly weapon is defined in 9 GCA § 16.10(d) as "any firearm, or other weapon, device, instrument, material or substance, whether animate or inanimate, which in the manner it is used or is intended to be used is known to the defendant to be capable of producing death or serious bodily injury."  9 GCA § 16.10(d) (2005); *see also People v. Quitugua*, 2015 Guam 27 ¶ 82 (using section 16.10 homicide statute's definition of deadly weapon as definition for aggravated assault); *People v. Ramey*, 2019 Guam 11 ¶ 20 (using section 16.10 to define "serious bodily injury").  The manner in which a "weapon, device, instrument, material or substance" is used, and the defendant's knowledge, determines whether an object is a deadly weapon.  9 GCA § 16.10(d); *Quitugua*, 2015 Guam 27 ¶ 82.

[35]    While a machete "has great potential as a dangerous weapon[, this] does not render it a dangerous weapon per se. . . .  [M]ere proof that defendant knew that a machete could be used as a dangerous weapon does not support a conviction . . . ."  *People v. Lynn*, 586 N.W.2d 534, 537 (Mich. 1998) (per curiam); *see also People v. Brown*, 277 N.W.2d 155, 157 (Mich. 1979) ("[P]ocket knives, razors, hammers, hatchets, wrenches, cutting tools, and other articles which are manufactured and generally used for peaceful and proper purposes, would fall within the category of dangerous weapons if used for or carried for the purpose of assault or defense.").  Thus, a machete, even when a defendant knows it may be used as a deadly weapon, is not per se a deadly

weapon. We must also assess the manner of its use to determine whether the machete is a deadly weapon.

[36]     We conducted a similar analysis in *People v. Quitugua*, where the defendant was convicted of aggravated assault and a special allegation for using his vehicle as a deadly weapon when fleeing from the police. 2015 Guam 27 ¶ 87. The defendant, while fleeing the police, operated the vehicle "hastily," making abrupt U-turns while driving approximately 40 miles per hour, and eventually collided with another vehicle. *Id.* ¶¶ 10, 87. We held that, based on the evidence, the car was used in a dangerous manner in an attempt to inflict bodily injuries. *Id.* ¶ 88. While a car is not a per se deadly weapon, the defendant used the car in a manner which rendered it dangerous to human life, thus making it a deadly weapon under 9 GCA § 16.10(d). *See Quitugua*, 2015 Guam 27 ¶ 88.

[37]     The People had the burden of proving the machete was a "deadly weapon." *Id.* ¶ 86. It was the People's burden to prove the machete was used in a dangerous manner that the defendant knew could cause death or serious bodily injury. *See* 9 GCA § 16.10(d). Based on Reselap's actions and the testimony elicited, the People presented sufficient evidence that Reselap knew of the machete's potential to cause death or serious bodily injury. This is evident from the serious injury Reselap inflicted upon E.R. when using the machete. Tr. at 166-96 (Jury Trial, Aug. 26, 2019). Based on this, a reasonable juror could find Reselap knew of the machete's capacity to cause death or serious bodily harm.

### 3. The special allegation enhancement was not improper as applied to Reselap's criminal mischief charges

[38]     We now address whether any rational trier of fact could have found, beyond a reasonable doubt, that Reselap, during the commission of criminal mischief, used the machete as a deadly weapon when he was hitting the vehicles. Reselap argues that a jury could not have reasonably found him guilty of the special allegations attached to the criminal mischief charges because he

used the machete to damage cars rather than as a deadly weapon—that damaging vehicles with a machete is not likely, in how it was used, to produce death or serious bodily injury to a human. Appellant's Br. at 23-24; Reply Br. at 8; *see also* 9 GCA § 16.10(d).

[39]     In their brief, the People cite to *State v. Peterson*, 157 P.3d 446, 450 (Wash. Ct. App. 2007). Appellee's Br. at 22.  In *Peterson*, after breaking into an unoccupied vehicle, the defendant used a knife to cut out the car stereo.  157 P.3d at 447-48.  When the owner of the car later arrived, the defendant attempted to flee the scene, and he was chased by the car owner.  *Id.* at 447.  It was only then, after his attempted escape was thwarted, that the defendant brandished the knife and threatened the car owner with it.  *Id.* at 448.  The defendant was convicted of malicious mischief with the sentencing enhancement of being armed with a deadly weapon, and he challenged this enhancement on appeal.  *Id.* at 448.  The *Peterson* court, referencing the state's "deadly weapon" statutes, stated: "There are two ways an instrument can qualify as a 'deadly weapon' under this statute: (1) The instrument is specifically listed as a 'deadly weapon' . . . ; or (2) the instrument 'has the capacity to inflict death and *from the manner in which it is used*, is likely to produce or may easily and readily produce death.'"  *Id.* at  449.  *Compare* 9 GCA § 16.10(d), *with* Wash. Rev. Code § 9.94A.602.

[40]     Reselap asserts that because, as related to the charge of criminal mischief, the machete was used only to damage the vehicles, that his use of the machete during this crime was not known to him to be capable of producing death or serious bodily injury.  *See* Appellant's Br. at 24.  While this argument may be persuasive under circumstances more akin to those in *Peterson*, the circumstances here differ.  Here, Reselap repeatedly swung at the vehicles with the machete while occupants were inside.   The *Peterson* court, in vacating the deadly-weapon sentencing enhancement, stated:

The trial court concluded, and the State argues on appeal, that the three-inch knife Peterson used to extract the car stereo qualifies under this second "deadly weapon" category because it (1) had the capacity to inflict death, and (2) Peterson's manner of use could easily and readily have produced death. We acknowledge that this is a close question. But we have difficulty understanding how Peterson's manner of use could easily and readily have produced death where there was no other person in or near Johnson's car while Peterson was using the knife to cut the stereo wires and to pry out the stereo in a deserted park and ride lot.

Moreover, although the trial court engaged in an extensive inquiry to determine whether Peterson possessed a deadly weapon during his subsequent robbery of Westfall, it did not make a separate inquiry to determine whether the manner in which Peterson used the knife to commit malicious mischief in Johnson's car met the criteria for a deadly weapon for that separate crime. Instead, the trial court summarily concluded that the deadly weapon sentence enhancement should apply to the malicious mischief conviction as well. Our independent review of the record leads us to conclude that the evidence does not support the trial court's deadly weapon finding for the malicious mischief count.

. . . .

We agree with Peterson that (1) at the time he was using the knife to cut the stereo wires, there were no other persons present against whom he could have used the knife in a deadly manner; and (2) his manner of use of the knife during the malicious mischief was not likely or easily and readily able to produce death. Peterson's use of the knife during his commission of the malicious mischief does not meet the statutory criteria for a non-per se deadly weapon for sentencing enhancement purposes under RCW 9.94A.602.

157 P.3d at 449-50. Applying that court's reasoning to the facts here supports the sentence enhancement related to Reselap's convictions of criminal mischief.

[41] The evidence adduced reveals that Reselap demonstrated more than a mere willingness to use the machete in a deadly manner while committing the offense of criminal mischief. He swung the machete through the air and hacked at vehicles, cutting through the metal and causing serious damage while the drivers of the vehicles sat inside them.[4] These vehicles were occupied and

---

[4] The testimony at trial included a victim describing the individuals as "pouncing on the vehicle and on the door of the vehicle" and "attacking the vehicle, all around the vehicle." Tr. at 119–20 (Trial, Aug. 26, 2019). Another victim described the scene as: "He was walking toward me. And he was walking on the right side of the road, swinging, slicing a machete, and then I saw him hit the rear -- right rear of the truck, pick up truck in front of me. And

actively in use as Reselap swung his machete, meaning the victims were only feet or even inches away from Reselap's motions. Our statutory standard is whether the manner in which the instrument is used is *capable* of producing death or serious bodily injury. *See* 9 GCA § 16.10(d). Based on the evidence viewed in the light most favorable to the People, a rational trier of fact could conclude beyond a reasonable doubt that Reselap was using the machete in a manner capable of causing death or serious bodily injury when he repeatedly swung at the occupied cars with a machete.

## C. The Evidence Was Sufficient to Sustain the Terrorizing Convictions

[42]     Reselap next argues there is insufficient evidence to convict him of terrorizing, as there is no evidence he communicated a threat. Appellant's Br. at 20. Reselap argues our terrorizing statute requires communication of a *verbal* threat. *See id.* We addressed this issue in *People v. Robert*, 2019 Guam 2; however, Reselap asks this court to reconsider its decision and overturn *Robert*. *Id.* at 20-21. The People maintain that *Robert* is not based on unsound reasoning, and thus this court should not overturn it. Appellee's Br. at 17-18. We agree with the People.

[43]     *Stare decisis* is a fundamental jurisprudential policy. *Ramey*, 2019 Guam 11 ¶ 17. Prior precedent usually must be followed even if the case might be decided differently by the current justices. *Id.* (quoting *Duenas v. Brady*, 2008 Guam 27 ¶ 17 n.4). This policy "is based on the assumption that certainty, predictability and stability in the law are the major objectives of the legal system." *Id.* (quoting *Duenas*, 2008 Guam 27 ¶ 17 n.4). Still, we may depart from our precedent in an appropriate case. *Id.* In deciding if we should do so, we consider whether our

---

I thought, oh my god, what am I in for? . . . And I watched him slowly walk from that pick up truck back towards my car, swinging the machete, slicing the air with it. . . he got to the front right of my car, and stood there, and then he raised it up . . . and all of a sudden— down the machete came and scared the bejesus out of me." Tr. at 208 (Trial, Aug. 27, 2019). The jurors saw a video depicting these events repeated throughout the trial. *See, e.g.,* Tr. at 14, 17, 19, 21, 43–44, 46, 48, 75, 77, 127, 129, 131–33, 136–38, 140, 162 (Aug. 27, 2019).

decision rested on unsound principles.  *Id.* (quoting *San Miguel v. Dep't of Pub. Works*, 2008 Guam 3 ¶ 40).

[44]     Title 9 GCA § 19.60 provides:

> A person is guilty of terrorizing if he communicates to any person a threat to commit or to cause to be committed a crime of violence dangerous to human life, against the person to whom the communication is made or another, and the natural and probable consequence of such a threat, is to place the person to whom the threat is communicated or the person threatened in reasonable fear that crime will be committed.

9 GCA § 19.60(a) (2005).

[45]     In *Robert*, we considered whether non-verbal communication could constitute a threat under our terrorizing statute.  2019 Guam 2 ¶ 10.  We held that, as the statutory scheme does not define "threat" or "communication," we must give the words their plain meaning.  *Id.*  We applied the definitions in Black's Law Dictionary:

> Under the plain meaning approach, a "threat [is] an expression of intention to inflict evil or injury on another." *Threat*, *Black's Law Dictionary* (10th ed. 2014); *see also Threat*, *Webster's* (2d ed. 1961).  A "communication" is the expression or exchange of information by "speech, writing, gestures, or conduct." *Communication*, *Black's Law Dictionary* (10th ed. 2014).

2019 Guam 2 ¶ 10 (alteration in original).  We also looked to the case law of other jurisdictions, finding many have affirmed the interpretation that "nonverbal acts satisfy the communication requirement if a threat can be gleaned from context."  *Id.* (quoting *Camacho*, 2015 Guam 37 ¶ 25).  The Minnesota Supreme Court, for example, held that communication rises to the level of a threat depending on the context, and communication may include gestures, sounds, and symbols.  *State v. Murphy*, 545 N.W.2d 909, 914-16 (Minn. 1996) (per curiam).  In Pennsylvania, the court found non-verbal gestures, such as miming shooting a gun, may convey a threat to commit a crime of violence toward a victim.  *Commonwealth v. Kline*, 201 A.3d 1288, 1291 (Pa. Super. Ct. 2019).

**[46]**	We maintain that the opinion in *Robert* reflects clear and sound reasoning, and we decline the invitation to overturn *Robert*, particularly "given the major objectives of the legal system to provide certainty, predictability, and stability in the law." *Ramey*, 2019 Guam 11 ¶ 18.

**[47]**	In the alternative, Reselap argues there is insufficient evidence to prove he intended to do harm to the individuals in the vehicles. Appellant's Br. at 22-23. In response, the People note the similarities between *Robert* and this case. Appellee's Br. at 20-21. The People reason that if the evidence in *Robert* was sufficient, then the similar evidence in this case should be held as sufficient. *Id.*

**[48]**	Because we give great deference to the verdict and view the evidence in the light most favorable to the prosecution when there is an insufficiency claim, our inquiry is whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *See Sangalang*, 2001 Guam 18 ¶ 20.

**[49]**	In *Robert*, we held the defendant communicated a threat by running with a machete toward a victim in a vehicle. 2019 Guam 2 ¶ 11. The defendant struck the vehicle several times, causing dents and slashes. *Id.* The defendant struck the driver's side window. *Id.* We held the cumulation of these facts was sufficient for a jury to find the defendant guilty of terrorizing under 9 GCA § 19.60(a). *Id.*

**[50]**	Reselap is similarly guilty if he communicated to a person a threat to commit or to cause to be committed a crime of violence dangerous to human life against the person, and the natural and probable consequence of such a threat was to place the person in reasonable fear that a crime of violence dangerous to human life would be committed. *See* 9 GCA § 19.60(a); RA, tab 97 (Am. Indictment). Reselap argues there is insufficient evidence that his actions communicated a threat against the individuals in the vehicles he damaged. Appellant's Br. at 20. Based on the evidence

elicited, a reasonable juror could find Reselap's actions communicated a threat to commit a crime of violence dangerous to the human lives inside the vehicles. A reasonable juror could perceive hitting a vehicle, slowly walking towards a vehicle while swinging a machete in the air, and staring at the victim while wielding a machete as non-verbal communication of intent to commit a crime of violence against a person. Testimony of the vehicles' occupants described their fear during the encounter with Reselap. *See*, *e.g.*, Tr. at 212 (Jury Trial, Aug. 27, 2019) ("I was afraid he was going to slice through the windshield . . . . I felt like a little rabbit as a snake is slithering closer to me."); Tr. at 120 (Jury Trial, Aug. 26, 2019) ("They went right up to the window. They had terror in their faces. In my opinion, they were out for blood to do harm, physical harm.").

[51]     While in *Robert* the defendant was running and here Reselap was walking, the threatening communication is similar. Based on the evidence viewed in the light most favorable to the People, a rational trier of fact could conclude beyond a reasonable doubt that Reselap is guilty of terrorizing. We affirm his conviction for this charge.

## D.  No Evidentiary Finding for Reselap's Ability to Pay the Fine

[52]     Reselap argues the trial court ignored the factors of 9 GCA § 80.52, Standards for Imposing Fines and/or Restitution, before sentencing him to a $5,000.00 fine, and thus the fine should be suspended. Appellant's Br. at 24-25. We agree, in part.

[53]     Title 9 GCA § 80.52 requires the court assess the financial resources of an offender before sentencing an offender to pay a fine, and states in relevant part:

> (c) The court shall not sentence an offender to pay a fine or make restitution unless the offender is or, given a fair opportunity to do so, will be able to pay the fine or restitution. The court shall not sentence an offender to pay a fine unless the fine will not prevent the offender from making restitution to the victim of the offense.

> (d) In determining the amount and method of payment of a fine or restitution, the court shall take into account the financial resources of the offender and the nature of the burden that its payment will impose.

9 GCA § 80.52 (2005). Title 9 GCA § 80.37(a)(2) states that anyone who "unlawfully possesses or uses a deadly weapon in the commission of a felony punishable under the laws of Guam . . . shall be fined not less than one thousand dollars ($1,000), but not more than five-thousand ($5,000), which fine shall be payable to the Criminal Injuries Compensation fund." 9 GCA § 80.37(a)(2) (2005). This statute obligates a judge, when sentencing, to impose a fine of at least $1,000.00 per special allegation. *See id.* These two statutes create potentially contradictory requirements for a sentencing judge, as they mandate a judge both to impose at least $1,000.00 per special allegation and to conduct an evidentiary hearing before imposing any fine.

[54]    The tenets of statutory construction direct us to first look to the plain meaning of the statute to resolve apparent conflicts and contradictions between statutes. *See People v. Enriquez*, 2014 Guam 11 ¶ 29. If ambiguity remains after such review, we must then examine the legislature's intent when passing the law. *Id.* If statutes have conflicting meanings, then we must try to read the statutes in a harmonious manner. *See, e.g.*, *Sumitomo Constr., Co. v. Gov't of Guam*, 2001 Guam 23 ¶ 16 ("Repeals by implication are disfavored. . . . Courts can avoid a finding of implied repeal if the two statutes can be reconciled."); *Dotson v. City of Lowell*, 289 S.W.3d 55, 58-59 (Ark. 2008); *Meza v. Portfolio Recovery Assocs., LLC*, 860 F.3d 1218, 1222 (9th Cir. 2017) (applying California rules of statutory interpretation). We assume the Legislature did not intend a statutory scheme where one statute is rendered inconsistent, meaningless, or superfluous because of another. *See Padash v. I.N.S.*, 358 F.3d 1161, 1170-71 (9th Cir. 2004).

[55]    Title 9 GCA § 80.52(c) and (d) require the trial court to make an evidentiary finding of a criminal defendant's ability to pay before being sentenced to pay a fine. *See People v. Quinata*,

2010 Guam 17 ¶¶ 50-54; *In re Cruz*, Crim. Appeal No. 82-00025A, 1983 WL 29938, at *2 (D. Guam App. Div. Mar. 18, 1983).  We assume the Legislature intended this statute be read harmoniously with 9 GCA § 80.37.  We read these two statutes to mean the trial court must first comply with the requirements of 9 GCA § 80.52(c) and (d), and then, upon a finding of a criminal defendant's ability to pay, sentence the offender to pay a fine under 9 GCA § 80.37(d).

[56]    The trial court fined Reselap $1,000.00 for each of the special allegations for which he was convicted, for a total fine of $5,000.00.  The trial court ordered the fine but did not conduct an evidentiary hearing or question Reselap on his ability to pay the fine.  Guam law mandates that the trial court must first make an evidentiary finding before imposing a fine.  Accordingly, we hold that the trial court erred by imposing a fine without first making an evidentiary finding of Reselap's ability to pay, considering whether all or part of the fine may be converted to community service.  We partially vacate the sentence and remand for resentencing under the guidelines of 9 GCA § 80.52.

### E.  Restitution

#### 1.  Ripeness

[57]    The People argue the issue of restitution is not yet ripe for review.  Appellee's Br. at 24-25.  "Ripeness is an issue of subject matter jurisdiction, and '[w]hether a court possesses subject matter jurisdiction is a question of law reviewable de novo.'"  *In re Moylan*, 2018 Guam 15 ¶ 6 (quoting *Blake v. Cnty. of Kaua'i Planning Comm'n*, 315 P.3d 749, 757 (Haw. 2013)).  Ripeness is a prudential doctrine which seeks to "prevent[] courts from entangling themselves in 'abstract disagreements.'"  *People v. Gay*, 2007 Guam 11 ¶ 8 (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 148 (1967), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977)).  "A question or claim is fit for judicial consideration when 'the issues raised are primarily legal, do not

require further factual development, and the challenged action is final.'" *Id.* (quoting *Verizon Cal. Inc. v. Peevey*, 413 F.3d 1069, 1075 (9th Cir. 2005) (Bea, J., concurring)).

[58]     The trial court sentenced Reselap to "be held liable for full restitution, if any, to the victims [E.R.], Atalig, Shadel, and Suda.  However, restitution payments shall be made to reimburse the Criminal Injuries Compensation Fund if payments are made to any victims prior."  RA, tab 198 at 5-6 (Judgment).  The restitution order set forth two possibilities for making restitution: restitution either goes directly to the victims, or, if an eligible victim receives a payment through the Criminal Injuries Compensation Fund ("Fund") before Reselap pays that victim restitution, then Reselap must make restitution directly to the Fund.  *Id.*

[59]     Issues are fit for judicial review when the issue is primarily legal and the issues do not require further factual development.  *See Gay*, 2007 Guam 11 ¶ 8.  The People argue this issue is not ripe for review because the court has not made an order for restitution and the eligible victim of the Fund, E.R., has not applied to the Fund.  Appellee's Br. at 25-26.

[60]     We disagree with the People's assessment.  Although the exact restitution has yet to be determined, and it is unclear if E.R. will seek restitution through the Fund, the sentence is sufficiently developed for us to assess the legality of the sentence itself.  The judgment ordered Reselap to pay "full restitution."  RA, tab at 198 (Judgment).  Although the precise amount is not specified, the sentence of restitution is factually sufficient for us to determine its legality.

[61]     We are asked to determine whether the restitution sentence required an evidentiary hearing under 9 GCA § 80.52 and whether the sentence mandating Reselap pay directly to the Fund is permissible under our statutes.  Both inquiries are legal questions with sufficiently developed facts for us to analyze.  Deciding the question of restitution will not exceed the prudential limits imposed by the ripeness doctrine.

## 2. The need for evidentiary findings before sentencing a defendant to pay restitution

[62]     Reselap argues the trial court disregarded the factors of 9 GCA § 80.52 before ordering his restitution sentence.  Appellant's Br. at 26.  We agree.  Like a sentence to pay a fine, 9 GCA § 80.52 mandates that the trial court conduct an evidentiary finding on the offender's ability to pay restitution before imposing such a sentence.

[63]     The former District Court of Guam Appellate Division in *In re Cruz* held that 9 GCA § 80.52 requires "an evidentiary hearing conducted by the court to determine whether the offender has the financial means to make the payment of restitution."  1983 WL 29938, at *2.  While the court must assess these factors, a defendant may waive this assessment by agreeing to pay restitution in a plea agreement or other stipulation.  *See Mallo*, 2008 Guam 23 ¶¶ 51-54; *People v. Faisao*, 2018 Guam 26 ¶ 28.

[64]     In *People v. Mallo*, the defendant agreed to pay restitution in a plea agreement.  2008 Guam 23 ¶ 51.  We found that the defendant read, understood, and voluntarily agreed to the terms of the agreement.  *Id.*  We held that the evidentiary hearing ordinarily required by 9 GCA § 80.52 is unnecessary when a defendant stipulated as to their ability to pay.  *Id.* ¶ 54.  "A stipulation, by its very nature, indicates that no factual dispute exists, and therefore no evidentiary hearing is required."  *Id.*  When a defendant voluntarily and knowingly promises to pay restitution, it is reasonable for the court to assume they have the ability to pay restitution.  *See id.* ¶ 57.

[65]     We review the trial court's factual findings on the defendant's ability to pay restitution for abuse of discretion.  *See id.* ¶ 12.  "A court abuses its discretion by basing its decision on an erroneous legal standard or clearly erroneous factual findings . . . ." *People v. Jesus*, 2009 Guam 2 ¶ 18 (quoting *San Miguel v. Dep't of Pub. Works*, 2008 Guam 3 ¶ 18).

[66]    During the sentencing hearing, Reselap indicated a desire to pay restitution.[5]    Reselap plainly, voluntarily, and knowingly stated he would, "if I am able," pay restitution to the victims. *See* Tr. at 31 (Sentencing, Feb. 12, 2020).  Reselap's counsel and the court interpreted this as an agreement to pay full restitution.  *See id.* at 36.  There is no evidence, however, that Reselap is able, or agreed without condition, to pay restitution.

[67]    In *Mallo*, we held no evidentiary hearing was necessary because the defendant had knowingly and voluntarily agreed to a stipulation about the restitution amount.  2008 Guam 23 ¶¶ 51-57; *see also Faisao*, 2018 Guam 26 ¶ 28.  Without this knowing and voluntary agreement, however, the court must conduct an evidentiary hearing as required by 9 GCA § 80.52.  *See In re Cruz*, 1983 WL 29938, at *2.

[68]    The purpose of the evidentiary hearing is to determine the defendant's ability to pay the restitution.  *Id.*; *see also Quinata*, 2010 Guam 17 ¶ 53.  A stipulation agreeing to pay restitution waives an evidentiary hearing only if the stipulation states the facts the court would hold the evidentiary hearing to assess—a defendant's ability to pay.  Reselap did not state he was able to pay.  He stated only a desire and a willingness to pay.

[69]    We hold the court's finding of Reselap's ability to pay is clearly erroneous, as there were no facts elicited that one could reasonably rely on to determine Reselap had the ability to make "full restitution."  We remand for resentencing under the guidelines of 9 GCA § 80.52.

//

//

//

---

[5] During the sentencing hearing Reselap said, "Mr. Atalig, Mr. Shadel, Ms. Lee and Ms. Pastrana, I am sorry for what I did and if I am able to pay you back for the damages to your car -- cars I will."  Tr. at 31 (Sentencing, Feb. 12, 2020).  His counsel later said, "Emmanuel also agreed to all restitution I think in the statement."  *Id.* at 36.  The court replied, "Significantly, he did."  *Id.*

### 3. Restitution to the Criminal Injuries Compensation Fund

[70]    Reselap argues the court cannot order restitution to be paid to the Fund as the Fund itself is not a victim. Appellant's Br. at 26. The People concede that Reselap cannot be ordered to reimburse the Fund because it is not a victim. Appellee's Br. at 25. We agree.

[71]    The statutory authority of the court to mandate restitution payments directly to the Fund is an issue of statutory interpretation. Thus, we review the sentence *de novo*. *See Manibusan*, 2016 Guam 40 ¶ 12.

[72]    The authority for our courts to sentence an offender to make restitution stems from our statutes. "[C]ourts of criminal jurisdiction have no power or authority to direct reparations or restitution in the absence of a statutory provision allowing them to do so." *State v. Hernandez*, 822 P.2d 1011, 1014 (Idaho Ct. App. 1991); *see also* Alan T. Harland, *Monetary Remedies for the Victims of Crime: Assessing the Role of the Criminal Courts*, 30 UCLA L. Rev. 52, 57 (1982) ("In the absence of statutory provisions, criminal courts apparently have no power to require restitution.").

[73]    When a defendant is convicted of a crime involving property damage, the court must sentence the defendant to pay restitution under 9 GCA § 80.53.[6] No section of our criminal code authorizes a court to order a defendant to make restitution to any party other than a victim. *See, e.g.*, 9 GCA §§ 26.06, 34.70, 80.50.

[74]    The Criminal Injuries Compensation Fund was established by 8 GCA § 161.95. The Fund gives money to victims and their families to offset some of the financial costs caused by a criminal

---

[6] Title 9 GCA § 80.53 states in its entirety: "The court shall require restitution in all cases wherein the offender has been convicted of a crime involving damage to property of the victim when the offender is or, given a fair opportunity to do so, will be able to pay the restitution."

offender. *See* 8 GCA § 161.95 (as amended by Guam Pub. L. 33-185:XIII (Sept. 10, 2016)). While the Fund may give money to victims of crimes, the Fund itself may not receive restitution.[7]

[75]     Our holding conforms to the case law of other jurisdictions. In California, for example, the court struck an order directing restitution payments to the State's Restitution Fund, similar to our Fund, because "that body is not analogous to restitutions made payable to the victim's insurers." *People v. Kwolek*, 48 Cal. Rptr. 2d 325, 333 (Ct. App. 1995); *see also State v. Harwell*, 515 N.W.2d 105, 110 (Minn. Ct. App. 1994) ("Because the Missing Children's Fund is not a victim of appellant's crime, it is not entitled to restitution.").

[76]     The judgment sentences Reselap to "be held liable for full restitution, if any, to the victims [E.R.], Atalig, Shadel, and Durviann Suda. However, restitution payments shall be made to reimburse the Criminal Injuries Compensation Fund if payments are made to any victims prior." RA, tab 198 at 5-6 (Judgment). Our criminal code allows a court to sentence an offender to make restitution only to victims themselves. As the Fund itself is not a victim for restitution, we partially vacate the sentence and remand for resentencing.

//

//

//

//

//

//

//

---

[7] We recognize that 8 GCA § 161.55 provides that "[a]ny *fine* imposed pursuant to 9 GCA § 80.50 [for specified violent crimes] *shall* be paid into the Criminal Injuries Compensation Fund . . . ." 8 GCA § 161.55(c) (as amended by Pub. L. 34-139:1 (Dec. 12, 2018)) (first emphasis added). However, this provision mentions only the payment of fines into the Fund, not restitution.

## V.  CONCLUSION

**[77]**     We **AFFIRM** the judgment in part, **VACATE** in part, and **REMAND** to the Superior

Court for resentencing not inconsistent with this opinion.


/s/                                                                    /s/
ROBERT J. TORRES                                       KATHERINE A. MARAMAN
Associate Justice                                              Associate Justice


/s/
F. PHILIP CARBULLIDO
Chief Justice